UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THIRD COAST INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>   v.<br><br>COJON, LLC,<br><br>    Defendant. | CASE NO. C23-5400 BHS<br><br>ORDER |

THIS MATTER is before the Court on plaintiff Third Coast Insurance Company's (TCIC) motion for summary judgment, Dkt. 11. TCIC seeks a declaratory judgment that the Comprehensive General Liability (CGL) insurance policy it sold to defendant Cojon, LLC, does not provide coverage for the claims asserted against Cojon in an underlying action pending in Cowlitz County Superior Court.

In that underlying action, Donald MacPherson asserts that he was injured at work while using a "fish skinning wheel" that his employer, Pacific Seafood, hired Cojon to manufacture. MacPherson contends that the fish wheel was negligently and defectively

ORDER - 1

designed and manufactured,[1] and that he was severely injured as a result. Dkt. 1 at 11–15. He sued Cojon, and Cojon tendered the defense of MacPherson's claim to TCIC. TCIC commenced this declaratory judgment action to determine its obligations under Cojon's CGL policy.

TCIC contends that its policy does not cover MacPherson's claims because Cojon's insurance application did not disclose that it would be manufacturing machinery like a fish skinning wheel, and TCIC did not charge a premium for insuring such operations. Instead, Cojon's insurance application included a Description of Operations related only to building construction:

> Repair and remodel of commercial buildings. May perform project management on commercial remodels as well. Repair/remodel/additions to residential buildings or properties. May perform project management on residential remodels as well. He also does Fab (welding) work. It's done in his shop. Will weld together custom brackets for things like decks, shelves, framing.

Dkt. 1 at 4. TCIC argues that by its terms, its CGL coverage is limited to only those classes of operations "expressly specified" in the application:

> The insurance coverage provided in this policy applies only to those operations of the Named Insured [Cojon] expressly specified in the application for insurance on file with the company and described under "DESCRIPTION OF OPERATIONS/CLASSIFICATION" section of the Declarations of this policy, and for which a premium has been paid.

---

[1] MacPherson's underlying complaint asserts that Pacific Seafood gave Cojon an old fish skinning wheel and asked Cojon to re-create it. Dkt. 1 at 12. It alleges that the wheel Cojon designed and manufactured was not reasonably safe under Washington's Products Liability Act because the old wheel had "notches drilled into the blades, which allowed set screws to hold the blades in place while the wheel spun." *Id.* at 12–13. MacPherson alleges that "Cojon failed to drill notches into the new blades on the new wheel, which prevented the set screws from holding the blades in place while the wheel spun." *Id.* at 13.

*Id*.

TCIC asserts that this "classification limitation" excludes coverage for Cojon's work on the fish skinning wheel (design and/or manufacturing) because it was not part of and was not consistent with the operations listed in Cojon's insurance application. It asserts that manufacturing machinery like a fish skinning wheel is not the sort of "Fab (welding)" Cojon disclosed as part of its operations repairing and remodeling residential and commercial buildings. Accordingly, TCIC claims, its policy does not provide coverage, and does not obligate it to defend (or indemnify) Cojon in the underlying action as a matter of law.

Cojon argues that it listed "Fab (welding) work" in its application, and that MacPherson alleges that it negligently or defectively fabricated the fish skinning wheel that injured him. Dkt. 14 at 2. It argues that insurance policies are to be construed in favor of coverage where there is any ambiguity in the policy language used:

> In Washington, undefined terms in an insurance policy are to be given their commonly understood meaning, an inclusionary clause in an insurance policy is to be liberally construed, exclusionary clauses are to be strictly construed, and ambiguous clauses are to be construed in favor of the insured and coverage. *Queen City Farms v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 65-66, 882 P.2d 703 (1994); *Certification v. Beatriz A. Ruiz*, 134 Wn.2d 713, 718, 952 P.2d 157 (1998); *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874-75, 854 P.2d 622 (1993).

*Id*. It argues that, under these principles, the term "fabrication" should be construed to include manufacture of the fish skinning wheel. *Id*.

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any

ORDER - 3

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

      The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

      The Court's task in interpreting an insurance contract is well-settled: it looks to the whole contract, giving it a fair, reasonable, and sensible construction. *Holden v. Farmers*

*Ins. Co.*, 169 Wn.2d 750, 755–56 (2010). Washington law provides that an "[i]nsurance contract should be given a practical and reasonable, rather than a literal, interpretation, and should not be given a construction which would lead to an absurd conclusion or render the policy nonsensical or ineffective." *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.,* 112 Wn.2d 1, 11 (1989). Put another way, a court "may not give an insurance contract a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms." *McAllister v. Agora Syndicate, Inc.,* 103 Wn. App. 106, 109 (2000) (quoting *Tewell, Thorpe, & Findlay, Inc. v. Cont'l Cas. Co.*, 64 Wn. App. 571, 576 (1992)). The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the drafting[2] insurer should not be permitted to have the effect of making a plain agreement ambiguous. *McAllister*, 103 Wn. App. at 110 (citing *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 80 Wn.2d 38, 44 (1971)).

Interpretation of an insurance contract is a question of law. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007). Terms are to be interpreted as the "average person purchasing insurance" would understand them. *Id*. While the insured has the burden of proving that claims fall within a grant of coverage, the insurer has the burden of proving that an exclusion bars coverage. *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992).

---

[2] Because Cojon's description of its operations is not ambiguous, the Court need not construe the term against the drafter. But it is notable that Cojon, and not TCIC, drafted the description of operations language that the Court is asked to construe.

The duty to defend is broader than the duty to indemnify and arises "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Woo*, 161 Wn.2d at 52–53.

In a declaratory judgment action, the duty to defend is determined by the facts alleged in the complaint. *Indian Harbor Ins. Co. v. Transform LLC*, 2010 WL 3584412, at *3 (W.D. Wash. Sept. 8, 2010) (citing *Holland Am. Ins. Co. v. Nat'l Indem. Co.*, 75 Wn.2d 909, 911 (1969)). "After obtaining a declaration of noncoverage, an insurer will not be obligated to pay from that point forward." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 885 (2013) (internal quotations omitted).

Cojon argues that MacPherson's complaint alleges that it negligently fabricated (or welded) the fish skinning wheel, and that he was injured as the result. It argues that its insurance application listed "Fab (welding)" as one of its business operations. Dkt. 14 at 2. It argues that undefined terms in an insurance contract are to be given their commonly understood meaning, that a policy's inclusionary clause is to be liberally construed, while an exclusionary clause is to be strictly construed. It argues that ambiguous clauses are to be construed in favor of the insured and of coverage. *Id*. (citing *Queen City Farms v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 65-66 (1994); *Certification v. Beatriz A. Ruiz*, 134 Wn.2d 713, 718 (1998); *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874-75 (1993)). Based on these rules of contract construction in the insurance coverage context, it argues that the term "fabrication" in its application should be construed to include Cojon's fabrication of the fish skinning wheel. *Id*.

Cojon characterizes TCIC's motion as asserting that its manufacture of the fish skinning wheel falls outside the policy's classification limitation, because it only covers only fabrication that is "incidental" to Cojon's work on residential and commercial buildings. *Id*. at 5. It asserts that a similar argument was rejected by the Eastern District of New York in *Lighton Indus. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167 (E.D.N.Y. 2018).

The CGL policy at issue in *Lighton* included a classification limitation describing the insured as a general contractor doing "interior renovation work." The policy provided coverage for personal injuries resulting from the insured's "operations as a general contractor with incidental exterior work not to exceed two stories." *Id.* at 176. A subcontractor's employee doing exterior renovation work on a college dormitory fell from a scaffold, was injured, and sued. *Id.* at 177. The insurer denied coverage because the specific project on which the worker was injured involved no interior work. It argued that the exterior work was therefore not incidental to any covered interior renovation work. The insured sued, seeking a declaratory judgment that the claim was covered. *Id*. at 179. The coverage issue was whether the exterior work had to be incidental to interior work on the specific *project* (the insurer's position) or whether it need be only incidental to the insured's overall *operations* (the insured's position). *Id*. at 187.

The Eastern District of New York employed *noscitur a sociis*,[3] a canon of construction instructing that a word should be interpreted "by the company it keeps." *Id*. at 188. It concluded that "'incidental' keeps company with 'operations,' not 'projects.'" *Id*. It concluded that both proposed constructions were reasonable, that the term was therefore ambiguous, and that, under New York law, the ambiguity must be construed against the drafting insurance company and in favor of coverage. *Id*. at 189.

Cojon argues that this case is analogous, and under *Lighton*, its "fabrication" does not have to be incidental to its residential or commercial building repair or renovation work to be covered by the CGL policy.

But Cojon's insurance application (drafted by Cojon, not TCIC), does not contain the word "incidental," and the meaning of the words it did use is not ambiguous. Instead, Cojon disclosed that its operations included repair and remodel of commercial buildings, and repair/remodel/ additions to residential buildings or properties, and project management on commercial and residential remodels. *See* Dkt.1 at 75. It disclosed that Cojon "also does Fab (welding) work. It's done in his shop. Will weld together custom brackets for things like decks, shelves, framing." *Id.*

---

[3] The U.S. Supreme Court recently applied *noscitur a sociis*, and a related canon, *ejusdem generis*, to conclude that destroying illegally harvested fish was not a crime under the Sarbanes-Oxley Act. *Yates v. United States*, 574 U.S. 528, 545 (2015).
    It held that a statute titled "Destruction or alteration of falsification of records in Federal investigations and bankruptcy" and which provided criminal penalties for anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, *or tangible object* with the intent to impede, obstruct, or influence the investigation . . . [.]" could not be reasonably construed to include dumping illegally harvested fish. *Id.* at 544. (2015) (emphasis added).

Even if Cojon had disclosed that it would do fabrication "incidental" to its residential and commercial remodel and repair work, *Lighton* is not even persuasive authority for the proposition that *any* fabrication is covered, whether it is related to Cojon's disclosed residential and commercial remodel and repair work, or not. *Lighton* turned on the conclusion that the exterior work at issue was incidental to the insured's main operations—interior renovations—even if the work on that specific project did not include interior work. Indeed, the court there rejected the insurer's contention that it did not charge a premium for riskier exterior work: the insurer "necessarily concedes that the premiums [it] accepted from [the insured] took into account the added risk from incidental exterior work." *Lighton*, 348 F. Supp. 3d at 189.

Nor does TCIC's summary judgment motion use the word "incidental." It argues instead that its CGL policy unambiguously excludes coverage for damages "resulting from work or operations which are not specific and custom to the description of operations listed on the application or the classification shown." Dkt. 11 at 3.

TCIC argues that Cojon's disclosure of its business operations did not remotely disclose that it would also be fabricating, welding, or manufacturing machinery like a fish skinning wheel, which has nothing to do with residential or commercial building remodeling or repair. It contends that such work is not "specific and custom" to the work Cojon disclosed, and that it is not covered. TCIC relies on an analogous classification limitation case applying Washington law, *Atlantic Cas. Ins. Co. v. Johnny's Quality Exteriors, Inc.*, 131 F. Supp. 3d 1077 (E.D. Wash. 2015).

The insured contractor there disclosed that its business involved carpentry for residential properties, contractor work for family dwellings, door and window work, and roofing for both commercial and residential properties. *Id*. at 1086. The insured was hired to rebuild a restaurant's wall. The wall collapsed and the insured was sued. It tendered the defense to its insurer, who denied the claim (and commenced a declaratory judgment action), asserting that its policy covered only roofing work on commercial buildings like the restaurant, and the work that led to the underlying claim was on a wall, not a roof. *Id*. at 1080. The Eastern District of Washington concluded that the insured had the burden to show that the type of work at issue was encompassed by its classification, and that it could not do so as a matter of law. It granted the insurer's summary judgment motion. *Id*. at 1087.

TCIC argues that there is similarly no ambiguity in the description of operations Cojon provided. It asserts that Cojon's reading of "fabrication" is so overly broad as to be unreasonable in the context of its description of its operations, which did not include manufacturing machinery entirely unrelated to its construction work. Dkt. 15 at 9.

The Court agrees. Cojon applied for insurance covering its residential and commercial remodeling and repair business, which included fabrication of specific sorts of parts related to that business: "Will weld together custom brackets for *things like decks, shelves, framing*." Dkt. 1 at 75 (emphasis added). The "Fab (welding)" in Cojon's application "keeps company with" the words "like decks, shelves, and framing"—components of the repair and remodel of residential and commercial buildings.

Everything in Cojon's application related to building repair and renovation, including its description of the Fab (welding) it would also do as part of that work, in its shop.

Cojon did not disclose that it would also be fabricating, welding, or manufacturing machinery wholly unrelated to those sorts of operations, like a fish skinning wheel, or a propeller, or a drawbridge. The words Cojon used are not ambiguous. No reasonable reading of its description could be construed as also including stand-alone fabrication, welding, or manufacturing of such unrelated machinery.

TCIC's motion for summary judgment is **GRANTED**. TCIC's CGL policy does not cover MacPherson's negligence and defective design and manufacturing claims against Cojon, and TCIC has no duty to defend or indemnify Cojon from MacPherson's claims in the underlying action, as a matter of law.

The Clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

Dated this 19th day of October, 2023.

BENJAMIN H. SETTLE
United States District Judge